Filed 2/28/22  P. v. Bell CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KURESE BELL,<br><br>    Defendant and Appellant. | D078794<br><br><br>(Super. Ct. No. SCD255762) |

APPEAL from a judgment of the Superior Court of San Diego County, Lorna A. Alksne, Judge.  Affirmed in part; reversed in part and remanded with directions.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Acting Assistant Attorney General, Arlene A. Sevidal, Lynne McGinnis, Randall D. Einhorn, and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

In the original appeal in this case, we issued our opinion in *People v. Bell* (Apr. 17, 2019, D072748 [nonpub. opn.]) (*Bell*), affirming in part and reversing in part the judgment against defendant Kurese Bell and remanding the matter with directions for the trial court to consider any Penal Code section 1170.95[1] petition filed by Bell and exercise its discretion under then newly amended section 12022.53 to strike or dismiss any or all of his firearm enhancements. In resentencing Bell on remand, the court considered and denied Bell's section 1170.95 petition and declined to strike or dismiss any of his section 12022.53 enhancements.

In his opening brief, Bell contends that the court: (1) erred by concluding he was ineligible for relief under section 1170.95 as a matter of law because he was convicted of first degree murder on the theory of provocative act murder; and (2) abused its discretion by denying his request to strike or reduce his section 12022.53 enhancements because it did not understand and/or exercise its authority to impose lesser section 12022.53 enhancements.

While this appeal was pending, Bell moved for permission to file a supplemental opening brief on the question of whether Assembly Bill No. 333 (Assem. Bill 333), effective on January 1, 2022, applies retroactively to his case and, if so, whether Assem. Bill 333 requires the reversal of his section 186.22 gang enhancements. We granted the motion and accepted for filing his supplemental opening brief in which he contends that Assem. Bill 333 applies retroactively to his nonfinal judgment and that his section 186.22 enhancements must be reversed because the jury was not instructed on, and

---

[1]    All statutory references are to the Penal Code unless otherwise specified.

2

did not find true, the newly revised elements for enhancements under section 186.22, as amended by Assem. Bill 333.

As explained below, we affirm the court's denial of Bell's section 1170.95 petition and its reimposition of his section 12022.53 enhancements, but reverse his section 186.22 enhancements and remand the matter with directions that the court conduct a new trial on any subsequent allegations filed by the People against Bell under newly amended section 186.22 and then resentence him based on any findings made at that trial.

## FACTUAL AND PROCEDURAL BACKGROUND

As discussed in *Bell, supra,* D072748, Bell and Marlon Thomas committed two armed robberies, the second of which resulted in Thomas's death when a security guard shot him.[2] In 2016, a jury convicted Bell of first degree murder (§§ 187, subd. (a), 189), attempted murder (§§ 187, subd. (a), 664), and two counts of armed robbery (§ 211). The jury also found true allegations that the attempted murder was deliberate and premeditated (§ 189), that in committing the attempted murder and robberies that Bell personally discharged a firearm (§ 12022.53, subds. (c), (d)), and that he committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)). The trial court sentenced Bell to an indeterminate term of 65 years to life in prison and a concurrent determinate term of 33 years in prison. In *Bell*, we affirmed his convictions, but reversed his sentence and remanded the matter with directions that the

---

[2] For a more complete description of Bell's offenses and the underlying criminal proceedings against him, refer to our opinion in *Bell, supra*, D072748.

3

trial court consider any section 1170.95 petition filed by Bell and exercise its new discretion to strike any or all of the section 12022.53 enhancements.

After the remittitur issued in *Bell, supra,* D072748, Bell filed a petition with the trial court seeking relief under section 1170.95 and a motion to strike the section 12022.53 enhancements. The People opposed the petition and motion. On April 9, 2021, the court conducted a resentencing hearing and denied both the section 1170.95 petition and motion to strike the section 12022.53 enhancements. The court then reimposed the sentence it had originally imposed. Bell timely filed a notice of appeal, challenging his resentencing.[3]

## DISCUSSION

## I

### *Section 1170.95 Does Not Apply to Provocative Act Murder*

Bell contends the trial court erred by concluding he was ineligible for relief under section 1170.95 as a matter of law because he was convicted of first degree murder on the theory of provocative act murder. He argues the court erred because the amendments to sections 188 and 189 made by Senate Bill No. 1437 (Sen. Bill 1437), effective January 1, 2019, abolished murder convictions based on imputed malice, which includes the theory of provocative act murder on which his first degree murder conviction was based, and therefore his petition qualified for relief under section 1170.95. Bell acknowledges that other appellate courts have rejected this argument, but argues those cases were wrongly decided and therefore we should not follow their reasoning. We disagree with Bell.

[3]    On January 3, 2022, we granted Bell's request, filed November 23, 2021, that we take judicial notice of the appellate record in Bell, *supra,* D072748.

4

A

*Procedural history.* Both parties agree, and the record shows, that the prosecution's sole theory at trial for its murder charge against Bell was the provocative act murder theory. At trial, the court instructed the jury with a modified version of CALCRIM No. 560 on first degree provocative act murder. (*Bell, supra,* D072748.) In particular, the court instructed that to prove Bell committed provocative act murder, the People were required to prove, among other things, that: (1) in committing the robbery Bell intentionally did a provocative act; and (2) he knew that the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life. In *Bell,* we extensively discussed the theory of provocative act murder and the evidence supporting Bell's conviction thereof and need not repeat that discussion here. The jury found Bell guilty of first degree murder based on that theory and on appeal we affirmed his conviction, concluding, among other things, that there was substantial evidence to support his conviction based on the theory of provocative act murder. In *Bell,* we rejected Bell's argument that there was insufficient evidence to support a finding that he acted with implied malice, stating: "In a provocative act murder case, *malice is implied* from the defendant's provocative act that goes beyond that necessary to commit the underlying crime (e.g., robbery)." We further concluded that if Bell wanted relief under Sen. Bill 1437, he must first file a petition in the trial court seeking relief under section 1170.95.

On November 15, 2019, Bell filed a section 1170.95 petition to reverse and vacate his murder conviction and to resentence him. His petition argued: (1) the information charged him with murder; (2) the information allowed the prosecution to proceed against him under a theory of felony murder and/or

under the natural and probable consequences doctrine (i.e., the provocative act murder theory); (3) he was convicted at trial of first degree murder; and (4) he could not now be convicted of first degree murder based on the provocative act murder theory because of the amendments made to sections 188 and 189.

The prosecution opposed Bell's petition, arguing that he was ineligible for relief under section 1170.95 as a matter of law because he was convicted on the theory of provocative act murder, which theory does not qualify for relief under section 1170.95.

On April 9, 2021, the court conducted a hearing on Bell's section 1170.95 petition and found that he had not made a prima facie showing for relief under that statute because he had been convicted of provocative act murder, which theory was not eligible for relief under section 1170.95.

B

*Sen. Bill 1437.*  The Legislature enacted Sen. Bill 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  In particular, Sen. Bill 1437 amended section 188, subdivision (a)(3) to require that, except as provided in section 189, subdivision (e), to be convicted of murder, "a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2.)  Sen. Bill 1437 amended section 189, subdivision (e) to provide that under the felony murder rule a participant in

6

the perpetration of an underlying felony may be liable for murder only if the person was the actual killer, an aider and abettor of the murder who acted with an intent to kill, *or* a major participant in the underlying felony and acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3.)

Sen. Bill 1437 also enacted new section 1170.95, which provides a procedure for defendants convicted of murder under previous law to petition for resentencing in the trial court if they could not be convicted of murder under current law. (Stats. 2018, ch. 1015, § 4.) Under section 1170.95, a trial court must appoint counsel for a petitioner who has filed a properly pleaded petition for relief and then determine whether a prima facie showing has been made regarding the petitioner's eligibility for relief under section 1170.95. (§ 1170.95, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).) If the court's examination of the record, without any factfinding, shows the petitioner is not eligible for relief as a matter of law, the court may find a prima facie showing has not been made and deny the section 1170.95 petition on that basis. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 332-333, review granted on other grounds Mar. 18, 2020, S260493, review dism. and cause remanded Jan. 5, 2022.) However, if a petitioner has made a prima facie showing, then the court must issue an order to show cause why the relief requested should not be granted and conduct an evidentiary hearing on the petition. (§ 1170.95, subds. (c), (d).)

C

*Analysis.* Although Bell acknowledges that those appellate courts that have addressed the instant issue do not support his contention, he nevertheless argues those courts wrongly decided this issue and asks that we interpret Sen. Bill 1437 as abolishing murder convictions based on imputed

7

malice, including the theory of provocative act murder on which his first degree murder conviction was based. He argues that if we were to adopt his suggested interpretations of Sen. Bill 1437 and the theory of provocative act murder, his petition qualified for relief under section 1170.95.

In *People v. Swanson* (2020) 57 Cal.App.5th 604 (review granted on other grounds Feb. 17, 2021, S266262, review dism. and cause remanded Nov. 23, 2021) (*Swanson*), the court addressed the instant question and concluded that a defendant convicted of provocative act murder is ineligible for section 1170.95 relief.[4] (*Id.* at p. 612.) In so concluding, *Swanson* noted that a conviction under the theory of provocative act murder requires proof that the defendant personally harbored the mental state of malice (i.e., a conscious disregard for life), which constitutes *implied malice*. (*Id.* at p. 613, citing *People v. Gonzalez* (2012) 54 Cal.4th 643, 655 (*Gonzalez*) and *People v. Gilbert* (1965) 63 Cal.2d 690, 703-704.) In contrast, a conviction under the natural and probable consequences theory of murder, now barred by Sen. Bill 1437, was based on an aider and abettor's *imputed*, not implied, malice.

---

4    On November 23, 2021, the California Supreme Court dismissed its review of *Swanson* and remanded the case to the appellate court. (*People v. Swanson* (S266262, Nov. 23, 2021) [498 P.3d 1025].) The court pronounced that to the extent *Swanson, supra*, 57 Cal.App.5th 604 is inconsistent with its opinion in *Lewis, supra*, 11 Cal.5th 952, *Swanson* is non-citable and nonprecedential. (*People v. Swanson, supra*, [498 P.3d 1025].) In *Lewis*, the court addressed two specific questions: (1) whether a trial court may consider a defendant's record of conviction in deciding whether a prima facie showing of eligibility for section 1170.95 relief has been made; and (2) when does a section 1170.95 petitioner's right to appointed counsel arise. (*Lewis*, at p. 957.) Because *Lewis* did *not* address the instant question involved in this appeal, which question *was* addressed in *Swanson*, we conclude *Swanson* remains citable to that extent and we may appropriately discuss its reasoning and holding on that question.

(*Swanson*, at pp. 610-611, citing *People v. Chiu* (2014) 59 Cal.App.4th 155, 161-162.)  Regarding Sen. Bill 1437's substantive amendments to section 188, *Swanson* stated that Sen. Bill 1437 "eliminated the natural and probable consequences doctrine for murder and restricted felony murder to circumstances where the defendant harbored malice or was a major participant in the underlying felony and acted with reckless indifference to human life.  [¶]  A primary purpose of [Sen. Bill] 1437 was to align a person's culpability for murder with his or her mens rea.  [Citation.]  To effectuate that purpose, [Sen. Bill] 1437 amended section 188 to state that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).)" (*Swanson*, at p. 611.)  *Swanson* further noted that Sen. Bill 1437 amended section 188 to provide:  " '[I]n order to be convicted of murder, a principal in a crime shall act with malice aforethought.' (§ 188, subd. (a)(3).)" (*Swanson*, at p. 613.)  In the circumstances of its case, *Swanson* concluded:  "Because [the appellant] was convicted of provocative act murder, the *jury necessarily found* he acted with *malice aforethought*.  He was therefore not convicted under the natural and probable consequences doctrine." (*Id.* at pp. 613-614, italics added.)  Based on similar reasoning, *Swanson* also rejected the appellant's contention that his conviction of first degree provocative act murder did not require a finding of malice and therefore was barred by Sen. Bill 1437's amendments to section 189 regarding the felony murder rule.  (*Id.* at pp. 616-617, citing *Gonzalez*, *supra*, 54 Cal.4th at p. 654 [distinguishing provocative act murder doctrine from felony murder rule].)

In *People v. Johnson* (2020) 57 Cal.App.5th 257 (*Johnson*), the court also addressed the question presented in this case and concluded that a direct perpetrator convicted of provocative act murder is ineligible for section

9

1170.95 relief because, among other things, under the theory of provocative act murder malice is not imputed to a direct perpetrator based on his or her participation in an underlying crime (e.g., robbery), but instead on his or her commission of provocative acts that manifested a conscious disregard for life. (*Id.* at pp. 267-268, 271.)

In *People v. Lee* (2020) 49 Cal.App.5th 254 (review granted on other grounds July 15, 2020, S262459, review dism. and cause remanded Nov. 23, 2021) (*Lee*), the court addressed the instant question and concluded that a defendant convicted of provocative act murder is ineligible for section 1170.95 relief.[5] (*Id.* at pp. 263-264, citing *Gonzalez*, *supra*, 54 Cal.4th at p. 655.) After distinguishing provocative act murder from the felony murder rule, *Lee* stated: "Because [the appellant] was convicted of provocative act murder, the *jury necessarily found* he acted with *malice aforethought*. Section 189, as amended, changed the felony murder rule, but [the appellant] was not convicted under that rule." (*Lee*, at p. 265, italics added.) It rejected the appellant's contention that provocative act murder was a subset of either felony murder or natural and probable consequences murder, "given that *provocative act murder requires proof of malice*, unlike the felony murder rule or natural and probable consequences doctrine as they existed before [Sen. Bill 1437]." (*Id.* at p. 266, italics added.)

[5]    As with *Swanson*, on November 23, 2021, the California Supreme Court dismissed its review of *Lee* and remanded the case to the appellate court. (*People v. Lee* (S262459, Nov. 23, 2021) [498 P.3d 1024].) The court pronounced that to the extent *Lee, supra*, 49 Cal.App.5th 254 is inconsistent with its opinion in *Lewis, supra*, 11 Cal.5th 952, *Lee* is non-citable and nonprecedential. (*People v. Lee, supra*, [498 P.3d 1024].) Because, as discussed in footnote 3 above, *Lewis* did *not* address the instant question involved in this appeal, which question *was* addressed in *Lee*, we conclude *Lee* remains citable to that extent and we may appropriately discuss its reasoning and holding on that question.

In *People v. Mancilla* (2021) 67 Cal.App.5th 854 (*Mancilla*), the court agreed with the analysis of the courts in *Swanson*, *Johnson*, and *Lee* and concluded that a defendant convicted of provocative act murder is ineligible for section 1170.95 relief. (*Mancilla*, at p. 867.) *Mancilla* stated that "a murder conviction under the provocative act doctrine requires proof the defendant 'personally harbored the mental state of malice.' [Citation.]" (*Ibid.*, quoting *Gonzalez, supra*, 54 Cal.4th at p. 655.) Accordingly, it rejected the appellant's contention that provocative act murder is a subset of the natural and probable consequences doctrine for purposes of Sen. Bill 1437 and section 1170.95. (*Mancilla*, at p. 867.) *Mancilla* stated: "Unlike natural and probable consequences liability for murder, which contained no requirement of proof of malice [citation], *malice aforethought—conscious disregard for life—is a necessary element of a conviction for provocative act murder . . . .*" (*Id.* at p. 868, italics added.) Furthermore, *Mancilla* adopted *Swanson*'s statement that the inclusion in provocative act murder " 'of proximate cause in terms of foreseeability of the natural and probable consequences of the defendant's malicious conduct does not somehow bring a provocative act killing within the malice-free natural and probable consequences doctrine.' [Citation.]" (*Mancilla*, at p. 868, quoting *Swanson, supra*, 57 Cal.App.5th at p. 614.) Accordingly, the court affirmed the trial court's order summarily denying the appellant's section 1170.95 petition. (*Mancilla*, at p. 870.)

We agree with, and adopt, the reasoning of the courts in *Swanson*, *Johnson*, *Lee*, and *Mancilla* and therefore need not discuss in detail our reasoning in concluding Bell's provocative act murder conviction is not eligible for section 1170.95 relief. Rather, we simply note that in convicting Bell of first degree provocative act murder, the jury necessarily found he had

11

actual malice. Specifically, it found that Bell was a direct perpetrator who performed a provocative act with *implied malice* that was the legal cause of Thomas's death. The jury did not find that Bell was an aider and abettor to whom malice was imputed. Rather, he was a direct perpetrator who was found to have actual malice aforethought. Accordingly, his provocative act murder conviction was not, as he asserts, merely a version or subset of the natural and probable consequences doctrine that is now prohibited by Sen. Bill 1437. (See, e.g., *Swanson, supra,* 57 Cal.App.5th at pp. 612, 614; *Lee, supra,* 49 Cal.App.5th at p. 264.) Therefore, we conclude that the trial court correctly denied Bell's section 1170.95 petition.

## II

### *Trial Court Did Not Abuse Its Discretion under Section 12022.53*

Bell contends the trial court abused its discretion by denying his request to strike or reduce his section 12022.53 enhancements because it did not understand and/or exercise its authority to impose a lesser enhancement. Because the premise of his contention is ill-founded, we reject his contention.

### A

*Procedural history.* The jury found true the section 12022.53, subdivision (d) allegations related to counts 2 (attempted murder) and 3 (robbery) and the section 12022.53, subdivision (c) allegation related to count 5 (robbery). At sentencing, the court imposed the then mandatory term of 25 years to life for the section 12022.53, subdivision (d) enhancement for count 2 and the then mandatory term of 20 years for the section 12022.53, subdivision (c) enhancement for count 5. The court imposed, but stayed pursuant to section 654, the section 12022.53, subdivision (d) enhancement for count 3.

12

As we discussed in *Bell*, *supra*, D072748, section 12022.53, subdivision (h) was amended, effective January 1, 2018, to grant sentencing courts the discretion to strike or dismiss a section 12022.53 enhancement in the interests of justice, which amendment applied retroactively to Bell's nonfinal judgment. In *Bell*, we remanded the matter for a resentencing hearing for the trial court to exercise its new discretion to strike any or all of the section 12022.53 enhancements imposed against him.

On remand, Bell filed a motion to strike the section 12022.53 enhancements imposed against him. The prosecution opposed his motion, arguing that striking any of the enhancements would not be in the interests of justice.

At the hearing on Bell's motion, his counsel argued for the first time that the court had discretion to either strike a section 12022.53 enhancement in its entirety or impose a lesser section 12022.53 enhancement, citing as support *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*). The prosecution argued that in consideration of Bell's personal and intentional discharge of a firearm causing great bodily injury to the security guard, it was not in the interests of justice to strike the section 12022.53 allegations that had been pled and proved and "impose[] a lower sentence." Following a short recess during which the court reviewed *Morrison*, the court stated:

> "I don't think [*Morrison*'s] really applicable here, . . . as it talks about . . . when the true finding comes back but it's not legally supported by the evidence.
>
> "Here it is legally supported by the evidence. There was great bodily injury. And to impose the [section 12022.53, subdivision (b) or (c) enhancement] I think would be in error.

13

> "So the Court's going to deny the motion to strike the imposition of a sentence enhancement. In addition, I'm exercising my discretion -- informed discretion, as [*Morrison*] says . . . I am informed of the options under [section] 12022.53 to follow *Morrison* and do [section 12022.53, subdivision (b), (c), or (d)]. And the Court is going to leave it as the enhancement of [section] 12022.53[, subdivision (d)] from [*sic*] Count 2."

Accordingly, the court resentenced Bell by reimposing the section 12022.53 enhancements that it had originally imposed.

B

*Relevant law.* "Section 12022.53 sets forth the following escalating additional and consecutive penalties, beyond that imposed for the substantive crime, for use of a firearm in the commission of specified felonies . . . : a 10-year prison term for personal use of a firearm, even if the weapon is not operable or loaded [section 12022.53, subdivision (b)]; a 20-year term if the defendant 'personally and intentionally discharges a firearm' [section 12022.53, subdivision (c)]; and a 25-year-to-life term if the intentional discharge of the firearm causes 'great bodily injury' or 'death, to any person other than an accomplice' [section 12022.53, subdivision (d)]." (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1124.) "For these enhancements to apply, the requisite facts must be alleged in the information or indictment, and the defendant must admit those facts or the trier of fact must find them to be true." (*Id.* at pp. 1124-1125.)

Section 12022.53, subdivision (h), as amended effective January 1, 2018, provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by

14

this subdivision applies to any resentencing that may occur pursuant to any other law." (Stats. 2017, ch. 682, § 2.) Section 1385 provides: "[A] judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) Section 1385 further provides that where "the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice . . . ." (§ 1385, subd. (b)(1).)

In *Morrison*, the court concluded that under newly amended section 12022.53, subdivision (h), trial courts have the discretion to strike a section 12022.53 enhancement and then impose a lesser included section 12022.53 enhancement. (*Morrison*, *supra*, 34 Cal.App.5th at pp. 222-223.) *Morrison* explained that case law generally supports the imposition by a trial court of a lesser enhancement that was not charged in the information when the greater, charged enhancement was found true by the trier of fact, but the trial court thereafter found that greater enhancement to be either legally inapplicable or unsupported by sufficient evidence. (*Id.* at p. 222.) Based on that general discretion, *Morrison* extended the scope of a trial court's discretion by concluding a trial court could also impose a lesser section 12022.53 enhancement after striking a section 12022.53, subdivision (d) enhancement under section 1385, *even if* that lesser enhancement had not been charged in the information and not been found true by a trier of fact. (*Id.* at pp. 222-223.)

In *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), the California Supreme Court recently agreed with *Morrison*'s holding that trial courts have discretion to strike a greater, charged section 12022.53 enhancement and impose a lesser, uncharged section 12022.53 enhancement instead. (*Id.* at

15

pp. 692, 697.) In reaching its holding, *Tirado* applied reasoning somewhat different from that applied in *Morrison*, concluding: "When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53[, subdivision ](d) enhancement, and the court determines that the section 12022.53[, subdivision ](d) enhancement should be struck or dismissed under section 12022.53[, subdivision ](h), the court may, under section 12022.53[, subdivision ](j), impose an enhancement under section 12022.53[, subdivision ](b) or (c)." (*Id.* at p. 700, fn. omitted.) In so concluding, the court reasoned that section 12022.53, subdivision (h) gives trial courts the discretion to strike or dismiss a greater, charged section 12022.53 enhancement and then section 12022.53, subdivision (j) gives them the discretion to impose a lesser, uncharged section 12022.53 enhancement where the accusatory pleading alleged, and the jury found true, the facts supporting such a lesser, uncharged section 12022.53 enhancement. (*Id.* at pp. 700, 702.) In particular, the court stated: "Section 12022.53[, subdivision ](j) is the subdivision that authorizes the imposition of enhancements under section 12022.53. It provides that for the penalties in section 12022.53 to apply, the existence of any fact required by section 12022.53[, subdivision ](b), (c), or (d) must be alleged in the accusatory pleading and admitted or found true."[6] (*Id.* at p. 700.) Accordingly, *Tirado* upheld *Morrison*'s holding, if not all of its reasoning in support thereof, that a trial court has the discretion to strike a greater, charged section 12022.53 enhancement and then impose a lesser, uncharged section 12022.53

---

[6] Section 12022.53, subdivision (j) provides: "For the penalties in this section to apply, the existence of any fact required under subdivision (b), (c), or (d) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact. . . ."

16

enhancement where the facts supporting that lesser enhancement were alleged in the information and found true by the jury.

In sentencing a defendant, a trial court must exercise informed discretion. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) If a trial court is unaware of the scope of its sentencing discretion, its sentencing decision is an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 [abuse of discretion occurs where trial court was not aware of its discretion to dismiss sentencing enhancement]; *People v. Langevin* (1984) 155 Cal.App.3d 520, 524 [same].)

C

*Analysis.* Contrary to Bell's assertion, the record affirmatively shows that the trial court understood and exercised its authority under *Morrison*, *supra*, 34 Cal.App.5th 217 (which was recently upheld in *Tirado*, *supra*, 12 Cal.5th 688, as discussed above), to strike a greater, charged section 12022.53 enhancement and instead impose a lesser, uncharged section 12022.53 enhancement where the underlying facts were found true by the jury and supported by the evidence. During a brief recess, the court reviewed *Morrison*. After the recess, the court expressly stated that it was "informed of the options under [section] 12022.53 to follow *Morrison* and do [section 12022.53, subdivision (b), (c), or (d)]." Recognizing those options under *Morrison*, the court stated that it was "exercising my discretion -- informed discretion" under *Morrison* and decided "to leave it as the enhancement of [section] 12022.53[, subdivision (d)] from [*sic*] Count 2." Construing the record favorably to support the court's decision, we conclude the court's statements show that it understood and exercised its discretion under *Morrison* to impose a lesser, uncharged section 12022.53 enhancement and

17

nevertheless chose to exercise its discretion by declining to do so in consideration of the facts and circumstances of this case and reimposing the original section 12022.53, subdivision (d) enhancement for count 2. Although the court did not repeat its reasoning in subsequently reimposing the original section 12022.53 enhancements relating to counts 3 and 5, we infer that the court likewise exercised its discretion under *Morrison* by again choosing to not impose lesser, uncharged section 12022.53 enhancements for those counts.

To the extent Bell argues the court's initial statements regarding *Morrison* show it misunderstood its discretion to impose lesser, uncharged section 12022.53 enhancements, we disagree. Specifically, on return from its recess, the court noted: "I don't think [*Morrison*'s] really applicable here, . . . as it talks about . . . when the true finding comes back but it's not legally supported by the evidence. [¶] Here it is legally supported by the evidence. There was great bodily injury." In so commenting, the court was not disagreeing with, or showing an unawareness of its discretion under, *Morrison*. Rather, the court was presumably referring to certain language in *Morrison* that discussed a trial court's general discretion to impose a lesser, uncharged enhancement where the charged enhancement was found true by the trier of fact, but was not supported by the evidence. (*Morrison, supra*, 34 Cal.App.5th at p. 222.) Based on that general discretion, *Morrison* reasoned that the trial court in its case had the discretion under section 1385 to impose a lesser, uncharged section 12022.53 enhancement, presumably even though there may have been sufficient evidence to support the imposition of the greater, charged enhancement. (*Id.* at pp. 222-223.) Accordingly, in this case, the trial court distinguished the circumstances here from those discussed in *Morrison* by finding there was evidence to support the jury's true

18

findings on the section 12022.53 enhancements charged against Bell. It then concluded it would be error for it to exercise its discretion by striking the greater, charged section 12022.53 enhancements and instead imposing lesser, uncharged section 12022.53 enhancements. In so doing, the court did not show any unawareness of its discretion under *Morrison* to impose a lesser, uncharged section 12022.53 enhancement in lieu of the greater, charged section 12022.53 enhancements. Accordingly, we conclude Bell has not carried his burden on appeal to show the court abused its discretion by reimposing the greater, charged section 12022.53 enhancements.

III

*Assembly Bill No. 333 Applies Retroactively to Bell's Nonfinal Judgment*

In his supplemental opening brief, Bell contends that Assem. Bill 333, effective January 1, 2022, applies retroactively to his nonfinal judgment and therefore his section 186.22 gang enhancements must be reversed and the matter remanded for further proceedings because the jury was not instructed on, and did not find true, the newly revised elements for enhancements under section 186.22, as amended. In its supplemental respondent's brief, the People concede Assem. Bill 333 applies retroactively to Bell's nonfinal judgment and argue that Bell's section 186.22 enhancements must be vacated and the matter remanded to allow the People the opportunity to retry the gang allegations based on newly amended section 186.22.

A

*Section 186.22 evidence and enhancements*. At trial, San Diego Police Detective Christopher Leahy testified that Bell was a documented member of the Eastside Skyline Piru gang. Detective Amalia Sidhu testified that a "criminal street gang" under section 186.22 engages in criminal activity

19

"individually or collectively as a group." Sidhu testified that Bell was a documented member of the Eastside Skyline Piru gang, which was a criminal street gang with primary activities that included homicide, robbery, and drug sales. She testified that Eastside Skyline Piru gang members have individually or collectively engaged in a pattern of criminal activity. Sidhu testified that three predicate offenses were committed by Eastside Skyline Piru gang members and that those offenses constituted a pattern of criminal activity. In particular, she testified that gang member Antuon Grey was convicted of first degree murder with gang allegations, gang member George Austin was convicted of robbery, assault with a deadly weapon, and assault likely to cause great bodily injury, all with gang allegations, and gang member Reality Grayson was convicted for unlawfully driving and taking a vehicle with a gang allegation. In so testifying, Sidhu briefly described the underlying facts of each of those predicate offenses. Her testimony was based on her review of police investigation reports, charging documents, and court exhibits 18, 19, and 20. Based on a hypothetical question involving facts paralleling those in the instant case, Sidhu opined that the hypothetical offenses were committed for the benefit of, in association with, and at the direction of the gang and with the intent to promote, further, or assist in the criminal activity of the gang.

In Bell's defense, Reginald Washington, a former member of the Eastside Skyline Piru gang who was then the chief executive officer of Project Aware, testified on gang culture and explained that individual gang members may commit crimes independently of the gang. He testified that gang members usually wear their gang colors and symbols when committing gang crimes. In the circumstances of Bell's case, he opined that the instant crimes were not gang related.

After the court instructed with CALCRIM No. 1401 on the elements of the gang allegations under the *former* version of section 186.22, the jury found true all of the section 186.22 gang allegations. At both his original sentencing and his resentencing on remand, the court imposed on Bell all of the section 186.22 enhancements.

B

*Assem. Bill 333.* Prior to January 1, 2022, former section 186.22 provided for enhanced punishment when a person was convicted of a specified felony committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (Former § 186.22, subd. (b)(1).) Under that former version of section 186.22, a "criminal street gang" was defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [specified criminal acts], having a common name or common identifying sign or symbol, and whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity." (Former § 186.22, subd. (f), italics added.) In addition, under the former version of section 186.22, the phrase "pattern of criminal gang activity" was defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of [specified] offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, by two or more persons." (Former § 186.22, subd. (e).)

Effective January 1, 2022, Assem. Bill 333 amended section 186.22 to now provide that a "criminal street gang" is "an ongoing, organized association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [specified criminal acts], having a common name or common identifying sign or symbol, and whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." (Assem. Bill 333, § 3 (2021-2022 Reg. Sess.) Stats. 2021, ch. 699; § 186.22, subd. (f), italics added.) Assem. Bill 333 also amended the definition of "pattern of criminal gang activity" to require the last of the predicate offenses to have "occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed," and that the predicate offenses "were committed on separate occasions or by two or more members, the offenses *commonly benefited* a criminal street gang, and the *common benefit* of the offenses is *more than reputational.*" (Assem. Bill 333, § 3; § 186.22, subd. (e)(1), italics added.) In addition, under newly revised section 186.22, the currently charged offense cannot be used as a predicate offense. (§ 186.22, subd. (e)(2).) To explain the "common benefit" requirement under newly amended section 186.22, Assem. Bill 333 amended section 186.22 to provide: "As used in this chapter, to benefit, promote, further, or assist means to provide *a common benefit to members of a gang where the common benefit is more than reputational.* Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (Assem. Bill 333, § 3; § 186.22, subd. (g), italics added.)

C

22

*Retroactive application of Assem. Bill 333.*  Bell argues that because his judgment is not yet final, the current version of section 186.22, as amended by Assem. Bill 333, effective January 1, 2022, must be applied retroactively to his case under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  The People agree that amended section 186.22 should apply retroactively to all nonfinal judgments, including Bell's nonfinal judgment, and therefore Bell's section 186.22 enhancements must be vacated.

In *Estrada*, the California Supreme Court held that a statute that reduces the punishment for an offense will generally apply retroactively to any case in which the judgment is not yet final before the effective date of the statute.  (*Estrada, supra*, 63 Cal.2d at pp. 742, 744-745.)  *Estrada* stated: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id.* at pp. 745.)  Although section 3 generally provides that no Penal Code statute "is retroactive, unless expressly so declared," *Estrada* concluded that general rule of construction did not apply where it can be discerned from the language of the statute and other factors that the Legislature intended the amended statute to apply to all judgments not yet final.  (*Estrada*, at pp. 746-747.)  Therefore, "where the amendatory statute mitigates punishment and

23

there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (*Id.* at p. 748.)

The California Supreme Court described its *Estrada* rule, stating: "The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657; see also *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307-308.)

*Estrada*'s rule of retroactivity has been applied where the Legislature has amended the elements required to prove a sentencing enhancement. (*People v. Nasalga* (1996) 12 Cal.4th 784, 787 [amendment of § 12022.6 increasing dollar amount of victim's loss required for sentence enhancement applied retroactively under *Estrada*]; *People v. Figueroa* (1993) 20 Cal.App.4th 65, 68, 70-71 (*Figueroa*) [amendment of § 11353.6, subd. (b) adding new element for sentence enhancement applied retroactively under *Estrada*]; *People v. Millan* (2018) 20 Cal.App.5th 450, 455-456 [applying *Figueroa* in concluding amendment to sentence enhancement statute applied retroactively].) *Figueroa* stated: "[A] defendant is entitled to the benefit of an amendment to an enhancement statute, adding a new element to the enhancement, where the statutory change becomes effective while the case was on appeal, and the Legislature did not preclude its effect to pending cases." (*Figueroa*, at p. 68.)

Here, because Assem. Bill 333's amendments to section 186.22 have, in effect, increased the threshold for true findings on section 186.22 gang allegations and the Legislature has not expressed any intent that its

24

amendments to section 186.22 are to apply prospectively only, we agree with Bell and the People that Assem. Bill 333's provisions apply retroactively to the section 186.22 enhancements imposed in the nonfinal judgment in this case. (*Estrada*, *supra*, 63 Cal.2d at pp. 742, 744-745, 748; *Figueroa*, *supra*, 20 Cal.App.4th at pp. 68, 70-71.) *People v. Lopez* (2021) 73 Cal.App.5th 327 (*Lopez*) recently addressed this issue and reached the same conclusion as we have that Assem. Bill 333's amendments to section 186.22 apply retroactively to nonfinal judgments. (*Lopez*, at p. 344.) Likewise, other Courts of Appeal have also recently agreed that Assem. Bill 333's amendments to section 186.22 apply retroactively to nonfinal judgments. (See, e.g., *People v. Sek* (Feb. 1, 2022, B309003) ___ Cal.App.5th ___, ___-___ (*Sek*) [2022 WL 292614, at pp. *1, *3-*5]; *People v. Vasquez* (Feb. 9, 2022, F078228) ___ Cal.App.5th ___, ___ (*Vasquez*) [2022 WL 387997, at pp. *6, *11]; *People v. Delgado* (Feb. 10, 2022, B299482) ___ Cal.App.5th ___, ___ (*Delgado*) [2022 WL 405390, at pp. *1, *11-*13].)

D

*Remand is required.* Bell argues that because the jury was not instructed, and did not make true findings, on the new elements of section 186.22, as amended by Assem. Bill 333, his section 186.22 enhancements must be reversed and the matter remanded for further proceedings. The People agree that Bell's section 186.22 enhancements must be vacated and argue that the matter should be remanded to allow the People the opportunity to retry the gang allegations based on newly amended section 186.22.

A criminal defendant has a constitutional right to a jury trial on every element of a charged sentencing enhancement. (*Figueroa*, *supra*, 20

25

Cal.App.4th at p. 71 [defendant "is entitled to have the jury decide every essential element of the crime and enhancement charged against him, no matter how compelling the evidence may be against him"].) Furthermore, a trial court has a sua sponte duty to instruct the jury on all elements of charged sentencing enhancements. (*People v. Singh* (2019) 42 Cal.App.5th 175, 181 ["In criminal cases, a trial court has a sua sponte duty to instruct regarding the general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case [citation], including the elements of a charged offense."].)

Under former section 186.22, as the trial court instructed on with CALCRIM No. 1401, the jury could make a true finding on the section 186.22 gang allegations against Bell if it found, inter alia, that the gang members "individually or collectively" engaged in a pattern of criminal gang activity. (Former § 186.22, subd. (f).) In contrast, under current section 186.22, the jury must find that gang members "*collectively*" engaged in a pattern of criminal gang activity. (§ 186.22, subd. (f), italics added.) Therefore, under the current version of section 186.22, which now applies retroactively to Bell's nonfinal judgment, the jury could not make a true finding on the section 186.22 allegations if it found the gang members acted individually, and not collectively, in criminal gang activity.

Furthermore, under former section 186.22, as the trial court instructed, the jury could make a true finding on the section 186.22 gang allegations against Bell if it found, inter alia, a "pattern of criminal gang activity" involving two or more predicate offenses that were committed on separate occasions or by two or more persons. (Former § 186.22, subd. (e).) In contrast, under current section 186.22, the jury can only find a "pattern of criminal gang activity" if, in addition to the above requirements, it also finds

26

the predicate offenses "*commonly benefited* a criminal street gang, *and* the common benefit of the offenses is *more than reputational*."  (§ 186.22, subd. (e)(1), italics added.)  In addition, current section 186.22 explains its "common benefit" requirement, providing:  "[T]o benefit, promote, further, or assist means to provide a *common benefit* to members of a gang where the common benefit is more than reputational.  Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (§ 186.22, subd. (g), italics added.)  Therefore, under the current version of section 186.22, which now applies retroactively to Bell's nonfinal judgment, the jury could not make a true finding on the section 186.22 allegations without a finding that the predicate offenses "commonly benefited a criminal street gang, and the common benefit of the offenses is more than reputational."  (§ 186.22, subd. (e)(1).)

Because the jury was not instructed on the newly amended version of section 186.22, which restricts the scope of its sentencing enhancements by adding the new requirements discussed above and applies retroactively to Bell's case, the jury could not, and did not, make findings on the truth of the section 186.22 allegations against Bell under the current elements of section 186.22.  As discussed above, Bell has a constitutional right to a jury trial on "every essential element" of the crimes and enhancements charged against him.  (*Figueroa*, *supra*, 20 Cal.App.4th at p. 71.)  Because Bell was not given a jury trial on any section 186.22 gang allegations based on its new elements that became effective January 1, 2022, we must reverse the true findings on all of his section 186.22 enhancements, strike the court's imposition of those enhancements, and remand the matter with directions that the court either:

27

(1) conduct a new trial on any subsequent allegations filed by the People under current section 186.22 and a resentencing hearing based on any findings made thereon; or (2) if the People elect to not file any subsequent allegations under current section 186.22, conduct a resentencing hearing based on the omission of any section 186.22 enhancements.

We conclude reversal of Bell's section 186.22 enhancements and remand of the matter is required because, regardless of any evidence admitted during his original jury trial that may have provided substantial evidence to support true findings on all of the elements under newly revised section 186.22, we cannot conclude that imposition of section 186.22 enhancements against Bell under its current elements without a jury trial thereon would be error that is harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Williams* (2001) 26 Cal.4th 779, 797; *Neder v. United States* (1999) 527 U.S. 1, 19 (*Neder*).) As a reviewing court, we cannot become, in effect, a second jury and reweigh the evidence to determine whether allegations under newly revised section 186.22 are true. (*Neder*, at p. 19.) As Bell argues, and the People apparently concede, Bell is entitled to a jury trial on any new allegations under current section 186.22 regardless of whether or not the evidence admitted at his original trial would overwhelmingly favor true findings under current section 186.22. (*Ibid.*; *People v. Mil* (2012) 53 Cal.4th 400, 409.)

In *Lopez*, the court addressed the instant issue and reached the same conclusion that reversal of the appellant's section 186.22 enhancements was required with remand for further proceedings under amended section 186.22. (*Lopez, supra*, 73 Cal.App.5th at pp. 344, 346.) In particular, *Lopez* stated: "[A]s the trial took place long before the statute was amended, the jury was not asked to, and therefore did not, make the factual determinations that are

28

now required by the amendments to section 186.22. To rule that the existence of evidence in the record that would permit a jury to make a particular finding means that the jury need not actually be asked to make that finding would usurp the jury's role and violate [the appellant's] right to a jury trial on all the elements of the charged allegations. [Citations.] We therefore conclude that the gang-related enhancement findings must be vacated and the matter remanded to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22." (*Id.* at p. 346.) Other Courts of Appeal have likewise concluded that reversal of nonfinal judgment enhancements under former section 186.22 must be reversed and the matters remanded to allow the People the opportunity to retry the gang allegations under current section 186.22. (See, e.g., *Sek*, *supra*, ___ Cal.App.5th at pp. ___, ___-___ [2022 WL 292614 at pp. *1, *3-*5]; *Vasquez*, *supra*, ___ Cal.App.5th at pp. ___, ___ [2022 WL 387997 at pp. *6, *11]; *Delgado*, *supra*, ___ Cal.App.5th ___ at pp. ___, ___-___ [2022 WL 405390 at pp. *1, *11-*13].) We agree with the reasoning in those cases and conclude that they support our analysis and disposition of Bell's section 186.22 contention.

## DISPOSITION

The judgment is reversed to the extent it imposed section 186.22 enhancements against Bell and the matter is remanded with directions that the court either: (1) conduct a new trial on any subsequent allegations filed by the People under current section 186.22 and a resentencing hearing based on any findings made thereon; or (2) if the People elect to not file any subsequent allegations under current section 186.22, conduct a resentencing hearing without the imposition of any section 186.22 enhancements. In all other respects, the judgment is affirmed.

IRION, J.

WE CONCUR:


McCONNELL, P. J.


GUERRERO, J.

30